UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

FORREST BRUCE,

        Plaintiff,

v.                                Case No. 5:09-cv-433-Oc-10PRL

W. GREGORY, Corrections Officer;
TAMYRA JARVIS, Warden; MARY MITCHELL,
Warden; A. MANSUKHANI; FNU LAWRENCE, Lieutenant;
FNU PARI, Lieutenant; KENNETH SMITH, Case Manager;
STEVE BURLEY, Counselor; FNU FLUEGEL, Corrections Officer;
FNU WILLIAMS, Corrections Officer; FNU BESS, Captain;
FNU SKINNER, Lieutenant; UNKNOWN FEDERAL
EMPLOYEES;  HARREL WATTS, Administrator,
National Inmate Appeals; RITA LNU,
Regional Director, SERO,

        Defendants.
_____

# O R D E R

      This cause is before the Court on the Defendants' amended motion to dismiss

Plaintiff Forrest Bruce's third amended civil rights complaint (hereinafter "Complaint"

or "complaint"). (Doc. 47 [Third Amended Complaint]; Doc. 59 [Amended Motion To

Dismiss Plaintiff's Third Amended Complaint]). Bruce is a federal inmate currently

confined in the low-security correctional institution at the Federal Correctional

Complex in Coleman, Florida (FCCI). Bruce was confined at FCCI when the alleged

incidents about which he complains occurred.

      Bruce has not shown that any Defendant violated his constitutional rights.

Further, has not shown that Defendants are not entitled to qualified immunity. Consequently, Defendants' amended motion to dismiss the complaint will be **granted.**

## PLAINTIFF'S ALLEGATIONS

Bruce alleges that on October 19, 2008, Correctional Officer Gregory inappropriately touched him during a routine pat down search and that the "routine pat search" reached the level of a sexual contact as defined by 18 U.S.C. § 2246(3).[1] Bruce complains that, when Defendant Gregory sought to pat search him the following day, October 20, 2008, Bruce refused and requested that Correctional Officers Fluegel and Williams perform the pat down search. These correctional officers refused to do so. Bruce complains that he was sanctioned for refusing to allow Defendant Gregory to pat search him on October 20, 2008. Bruce alleges that when he informed the remaining defendants at various times about the reason for his refusal to allow Defendant Gregory to pat search him October 20, 2008, none of the remaining defendants took any action to investigate his allegations.

Bruce asserts that Defendant Gregory's conduct constituted sexual battery under state tort law and violated his rights under the Fourth and Eighth

---

[1] Title 18 U.S.C. § 2246 is entitled "Sexual Abuse." Title 18 U.S.C. § 2246(3) defines sexual contact: "the term 'sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

Amendments.  He also asserts that the sanctions imposed against him following his subsequent refusal to be searched by Defendant Gregory on the second day violated his right to Due Process under the Fifth Amendment.  Bruce asserts that Defendants violated his rights to Due Process and free speech when they placed him in Administrative Detention while investigating his allegations.  He claims that Defendants placed him in Administrative Detention in retaliation for his filing an administrative remedy request, and for his filing the present civil action.

As relief, Bruce seeks damages and an injunction directing Defendants to comply with the Bureau of Prisons (BOP) rules regarding Administrative Detention. (Doc. 47 at 36).

## STANDARD OF REVIEW FOR RULE 12(B)(6) MOTIONS TO DISMISS

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Thus, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed.R.Civ.P.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court expressly "retired" the "no set of facts" pleading standard under Rule 8(a)(2) that the

3

Court had previously established in *Conley v. Gibson*, 355 U.S. 41, 47 (1957). *Twombly*, 550 U.S. at 563. Justice Black wrote for the Court in *Conley* on the rejection of "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45–46. In rejecting that language, the *Twombly* Court noted that courts had read the rule so narrowly and literally that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." 550 U.S. at 561 (internal quotation marks and alterations omitted).

While a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As a general proposition (and setting aside for the moment the special pleading requirements that attach to § 1983 and *Bivens*[2] claims subject to a qualified immunity defense), the rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Judicial inquiry at this stage focuses

---

[2] In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court established that, in certain circumstances, "the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980).

on whether the challenged pleadings "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555). Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Twombly*, 550 U.S. at 555–56.

    *Twombly* applies to § 1983 prisoner actions. *Douglas v. Yates*, 535 F.3d 1316 (11th Cir.2008). As the Eleventh Circuit has explained, "[w]e understand *Twombly* as a further articulation of the standard by which to evaluate the sufficiency of all claims brought pursuant to Rule 8(a)." *Davis v. Coca–Cola Bottling Co. Consol.*, 516 F.3d 955, 974 n. 43 (11th Cir. 2008).

    The Supreme Court has applied the *Twombly* plausibility standard to another civil action, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In evaluating the sufficiency of Iqbal's complaint in light of *Twombly*'s construction of Rule 8, the Court explained the "working principles" underlying its decision in *Iqbal*. 556 U.S. at 678.

    First, the Court held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Second, restating the plausibility standard, the Court held that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-- but it has not 'show [n]'--'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)). The Court suggested that courts considering motions to dismiss adopt a "two-pronged approach" in applying these

5

principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Importantly, the Court held in *Iqbal*, as it had in *Twombly,* that courts may infer from the factual allegations in the complaint "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer. *Id.* at 1951–52 (quoting *Twombly*, 550 U.S. at 567).

Dismissal is appropriate if the complaint fails to allege facts regarding an element of the claim necessary to obtain relief.  Furthermore, a motion to dismiss should be granted if an affirmative defense or other bar to relief appears on the face of the complaint. *See, e.g., Prudential Ins. Co. of America v. Baum*, 629 F. Supp 466 (N.D. Ga. 1986) (quotation marks and citations omitted).

## DISCUSSION

### *I.*

**Defendant Gregory's alleged sexual battery does not rise to the level of a constitutional violation.** Bruce's claim of sexual battery, in its entirety, consists of his assertion that on October 19, 2008, he was directed by Defendant Gregory to submit to a pat search, and that Gregory, in conducting the search, placed his hands "inside and up" Bruce's gym shorts, and "fondled" his penis, testicles, and anus. (Doc. 47 at 12). Bruce did not feel the need to report the alleged sexual battery to any other BOP staff at that time. (Doc. 47 at 12).

6

Bruce asserts that the following day, Gregory again directed him to submit to a pat search. (Doc. 47 at 14). Bruce refused, which ultimately resulted in his being placed in the Special Housing Unit for failure to obey a direct order. The sole allegation of sexual battery is confined to a single pat search conducted on October 19, 2008. Such contact, even if true, does not rise to the level of a constitutional violation.

It is well established that not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillan*, 503 U.S. 1, 9 (1992). While the Eleventh Circuit has recognized that "severe or repetitive sexual abuse of a prisoner by a prison official" can violate the Constitution, *Boxer X v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006) (citing *Giron v. Corrections Corp. Of Am.*, 191 F.3d 1281, 1290 (10th Cir. 1999); *Freitas v. Ault*, 109 F.3d 1335,1338 (8th Cir. 1997); *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2nd Cir. 1997)), the conduct at issue here was neither severe nor repetitive.  To establish liability for such conduct, the inquiry consists of both an objective component, which requires the injury suffered to be "objectively, sufficiently serious," and a subjective component, which requires that the prison official have a "sufficiently culpable state of mind." 437 F.3d at 1111. The single incident described by Bruce does not rise to the level of "objectively [and] sufficiently serious" injury.  Indeed, in *Boxer X*, the Eleventh Circuit found that "a female guard's solicitation of a male prisoner's manual  masturbation, even under the threat of reprisal, does not present more than *de minimus* injury." *Id.* The conduct

7

at issue in that case was substantially more serious and involved a much greater evidence of intent than Bruce presents. *See also Washington v. Harris*, 186 Fed. App'x. 865, 866 (11th Cir. 2006) (unpublished) (holding that a prisoner's allegations that he suffered momentary pain, "psychological injury," embarrassment, humiliation, and fear after he was subjected to an officer's offensive and unwanted touching were *de minimus* injuries not rising to the level of constitutional harm, even if the officer's conduct was inappropriate and vulgar); *Jackson v. Madery*, 158 Fed. App'x. 656, 661-62 (6th Cir. 2005)(unpublished) (holding that allegation of rubbing and grabbing of prisoner's buttocks in a degrading manner did not amount to an Eighth Amendment violation); *Joseph v. Federal Bureau of Prisons*, 232 F.3d 901 (10th Cir. 2000) (table, unpublished) (no Eighth Amendment violation where prisoner alleged prison official "touched him several times in a suggestive manner and exposed her breasts to him"); *Boddie, supra*, 105 F.3d at 861 (holding that a few incidents involving verbal harassment, touching, and pressing without consent are not sufficiently serious to constitute an Eighth Amendment violation); *Young v. Poff*, 2006 WL 1455482, at *4 (W.D. N.Y. 2006) (holding that a single groping incident did not amount to an Eighth Amendment violation); *Williams v. Anderson*, 2004 WL 2282927, at *1 (D. Kan. 2004) (finding no Eighth Amendment violation where prison guard grabbed plaintiff's buttocks, exposed his penis to plaintiff, and made crude sexual remarks); *Jones v. Culinary Manager II*, 30 F.Supp.2d  91, 493 (E.D. Pa. 1998) (holding that allegation that a guard pinned plaintiff to box, ground his pelvis

against plaintiff's buttocks, and threatened sex was not sufficiently serious to be an Eighth Amendment violation).

Ultimately, as in the controlling case of *Boxer X* and in the similar cases of persuasive value cited above, Bruce's allegation of a single instance of allegedly sexual contact by a prison guard during a pat search is does not rise to the level of a constitutional violation.

## II

**Bruce cannot establish a constitutional violation for his placement in the Special Housing Unit.**  Bruce raises two substantive due process claims stemming from his placement on three occasions in the Special Housing Unit. However, these claims must be dismissed as a matter of law, because Bruce has no constitutional interest in being free from the disciplinary or administrative segregation of which he complains. *See Sandin v. Connor*, 515 U.S. 472, 487 (1995).

Pursuant to *Sandin*, a prisoner possesses a liberty interest under the Constitution when a change in confinement imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." 515 U.S. at 484. A prisoner's confinement in administrative segregation for non-punitive reasons does not implicate a liberty interest because such segregation falls within the ordinary terms of confinement. *Id.*

An inmate's placement in disciplinary segregation may implicate a liberty interest, but only if the placement substantially differs from the ordinary conditions

9

of confinement. *Id.* at 486. Further, "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.* at 485. Thus, in *Sandin*, the Court found that the prisoner's being placed in disciplinary segregation for 30 days was neither a "dramatic departure" from the ordinary conditions of confinement nor a "major disruption in his environment." *Id.* at 485-86.

As in *Sandin*, Bruce's allegations here, even if true, do not establish that he was subjected to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." His claim regarding a 57-day placement in administrative detention, and an undefined, subsequent placement in administrative detention does not implicate a liberty interest under *Sandin* as a matter of law. Because placement in administrative detention did not implicate a liberty interest as a matter of law, clearly Bruce had no [Due] process  relative to such placement.

While a claim regarding time spent in disciplinary segregation could potentially implicate a liberty interest, it cannot here, where Bruce asserts that he was placed in disciplinary segregation for 11 days after his refusal to follow a direct order - a significantly shorter period than the 30-day period deemed below the threshold for "atypical and significant" in *Sandin*.   Likewise, restrictions on telephone or commissary privileges are also not "dramatic departures" from the ordinary conditions of confinement, nor do they fall outside the reasonable scope of discipline.

10

Furthermore, while Bruce claims that he was "often denied necessary blood sugar monitoring for his advanced diabetes and that his insulin was frequently administered hours late, resulting in frequent dizziness and other symptoms associated with improper timing and amount of insulin injections," Bruce's claim does not rise to the level of a constitutional violation. In order to state a claim for a violation of the Eighth or Fourteenth Amendments, Bruce must show that the Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Farrow v. West*, 320 F.3d 1235 (11th Cir. 2003). Thus, a plaintiff must show first that he had an "objectively serious medical need" *Farrow*, 320 at 1243 (citing *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000), *cert. denied*, 531 U.S. 1077 (2001)); and, second that the defendant acted with an attitude of "deliberate indifference" toward rendering treatment to the serious medical need. *Farrow*, at 1235 (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). Deliberate indifference is a state of mind more egregious and culpable than mere negligence. *Estelle*, 429 U.S. at 104-106. In fact, even gross negligence does not satisfy the requisite state of mind. *Farmer*, 511 U.S. at 835, n. 4. Conduct which results from accidental inadequacy, or which arises from negligence in diagnosis or treatment, or even which is considered medical malpractice under state law, does not constitute deliberate indifference. *Taylor*, 221 F.3d at 1258. Rather, medical treatment violates the Eighth or Fourteenth Amendment only when it is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to

11

fundamental fairness.'" *Faison v. Rosado*, 129 Fed. App'x. 490, 491 (11th Cir. 2005) (unpublished)(quoting *Harris v. Thigpen*, 941 F.2d 1495, 1501 (11th Cir.1991)). Bruce has not shown that any lack in his medical treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

## III.

**Defendants Jarvis, Mitchell, Mansukhani, Lawrence, Pari, Smith, Burley, Fluegel, Williams, Bess, Skinner, Watts, and Rita did not violate Bruce's constitutional rights.** To establish *Bivens* liability against an individual defendant, a plaintiff must demonstrate either that the defendant directly participated in the alleged constitutional deprivation or that there is some other causal connection between the official's acts or omissions and the alleged constitutional deprivation. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003); *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009), the Court held that "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." In his third amended complaint, however, Bruce fails to assert facts under which Defendants Jarvis, Mitchell, Mansukhani, Lawrence, Pari, Smith, Burley, Fluegel, Williams, Bess, Skinner, Watts, or Rita could be deemed to have violated his constitutional rights. Bruce's claims for relief are grounded in the theory that Defendant Gregory's alleged sexual battery violated

12

Bruce's Fourth and Eighth Amendment rights, and that the detentions ordered by Defendants Bess and Skinner violated his rights to Due Process and/or free speech. However, as shown below, Bruce does not assert facts sufficient to demonstrate that any of these Defendants violated his constitutional rights.

### Defendants Jarvis and Mitchell

Defendants Jarvis and Mitchell are former Wardens at FCCI. In his third amended complaint, Bruce makes no allegations that either Defendant committed any affirmative constitutional violation against him.

### Defendant Mansukhani

Defendant Mansukhani was an Associate Warden at FCCI and is presently the Deputy Regional Director for the BOP's Southeast Region. Bruce's allegation against him is that after learning of the allegation of abusive sexual contact, Mansukhani took no action to investigate or any action to determine whether an investigation was undertaken. (Doc. 47 at 18).

### Defendants Lawrence and Pari

Defendants Lawrence and Pari are Lieutenants at FCCI. Bruce's allegations against them are that they failed to report Defendants Fluegel and Williams' alleged failure to protect him, and that they failed to take any action regarding Bruce's allegation of sexual battery. (Doc. 47 at 14).

### Defendants Smith and Burley

Defendants Smith and Burley are a case manager and a retired correctional

13

counselor, respectively, at FCCI. Bruce's allegations against them are that they failed to report the allegation of sexual battery and failed to document the reasons why Bruce refused to obey a direct order (to be pat searched by Defendant Gregory on October 20, 2008. (Doc. 47 at 15-16).

## Defendants Fluegel and Williams

Defendants Fluegel and Williams are Correctional Officers at FCCI. Bruce's allegations against them are that they refused to agree with his demand that instead of Defendant Gregory, one of them conduct his pat search, and that they failed to report Bruce's allegation of sexual battery. (Doc. 47 at 14).

## Defendants Bess and Skinner

Defendants Bess and Skinner are Correctional Officers at FCCI.  Bruce's allegations against them are that they placed him in confinement for his own safety, and later while his case was being investigated. (Doc. 47 at 14).

## Defendants Watts and Rita

Bruce's allegations against them are that they failed to acknowledge that he had alleged abusive sexual contact and they failed to take action to investigate that allegation or to determine whether an investigation had been conducted. (Doc. 47 at 18).

## The Court Lacks Personal Jurisdiction over Watts and Rita

Defendant Watts is the National Administrative Remedy Coordinator for the Federal Bureau of Prisons.  Defendant Rita is, according to Bruce, the Regional

14

Director for the BOP Southeast Regional Office.[3]  Defendants Watts and Rita were served out-of-state. (*See* Docs. 30, 31 [reflecting that Defendant Watts was served in Washington, D.C., and that Defendant Rita was served in Atlanta, Georgia]).

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)(citing *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1214 (11th Cir. 1999)); *Polskie Linie Oceaniczne v. Seasafe Transp. A/X,* 795 F.2d 968, 972 (11th Cir. 2002).

Bruce asserts generally that "[all] material facts contained [in the complaint] occurred in Sumter County, Florida at the Coleman Federal Correctional Complex." (Doc. 47 at 12). The only actions taken by Defendants Watts and Rita were reading Bruce's administrative grievances, which was done in their offices in Washington, D.C. and Atlanta, Georgia, respectively.

Bruce cites to no ties to Florida at all on the part of Defendants Watts and Rita.  At most the complaint can be read as implying that jurisdiction is proper because of the allegedly inadequate responses sent by Watts and Rita to Bruce in Florida following Bruce's submission of administrative remedies. However, the mere act of mailing a letter to a recipient in the forum state in insufficient to establish the

---

[3] The Regional Director for the BOP's Southeast Regional Office at the relevant time was actually Raymond Holt.

contact with the forum state required to establish personal jurisdiction. *See Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265-66 (11th Cir. 1998); *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995). Furthermore, "the mere fact that federal government officials enforce federal laws and policies . . . on a nationwide basis is not sufficient in and of itself to confer personal jurisdiction in a lawsuit which seeks money damages against those same governmental officials in their individual capacities." *Wag-Aero, Inc. v. United States*, 837 F.Supp. 1479, 1485 (E.D. Wis. 1993), *aff'd* 35 F.3d 569 (7th Cir. 1994)(citing *Stafford v. Briggs*, 444 U.S. 527, 543-45 (1980)).

## Summary

In short, Bruce's allegations against Defendants Jarvis, Mitchell, Mansukhani, Lawrence, Pari, Smith, Burley, Fluegel, Williams, Watts, and Rita, to the extent he makes any, is not that those defendants directly engaged in any misconduct or affirmatively violated his constitutional rights, but that they failed to investigate, report, or prevent the violations from occurring.

However, such action or lack thereof, does not constitute personal participation in the constitutional violations alleged by Bruce. Bruce does not establish any causal connection between these Defendants' alleged failure to act and the violations Bruce contends were committed by Defendants Gregory, Bess, and Skinner.

Bruce's allegations against Defendants Gregory, Bess, and Skinner are the

16

basis for Bruce's complaint.  Bruce asserts Defendant Gregory sexually battered him one time.   No other Defendant was involved. He also asserts that his refusal to submit to a subsequent pat search resulted in his being placed in detention by Defendant Bess, and later placed in protective custody while the matter was being investigated by Defendant Skinner.

Simple allegations of a failure to protect, without more, are insufficient to state a claim under the Eighth Amendment.[4] Because Bruce does not assert or demonstrate  direct, personal participation in the alleged constitutional violations raised in his complaint against Defendants Jarvis, Mitchell, Mansukhani, Lawrence, Pari, Smith, Burley, Fluegel, Williams, Bess, Skinner, Watts, or Rita, Bruce's complaint fails to state a valid claim against them.

**IV.**

**Bruce cannot establish a claim for retaliation**. The First Amendment

---

[4]  To provide a valid complaint for a failure to protect, a prisoner must demonstrate that he is "incarcerated under conditions posing a substantial risk of serious harm, and that the defendant prison official had a "culpable state of mind" and disregarded "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Further, the known risk of injury must be "a strong likelihood, rather than a mere possibility." *Brown v. Hughes*, 894 F.2d1533, 1537 (11th Cir. 1990). Merely negligent failures do not justify individual liability. *Id.*; *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003). Here, even assuming that his assertion of a single instance of sexual battery is true, Bruce shows neither that he was at substantial risk of serious harm nor that the other defendants had a culpable state of mind in allegedly failing to report or investigation his allegation of such. *See also Reynolds v. Henry*, 69 F.3d 548 (10th Cir. 1995) (unpublished) ("A conclusory allegation of a failure to investigate without other non-conclusory allegations relating to the defendant's state of mind and the defendant's knowledge of dangerous circumstances does not constitute a cognizable claim for violations of Eighth Amendment rights in a civil action brought pursuant to *Bivens*[.]").

prohibits state officials from retaliating against prisoners for exercising their right of free speech. *Thomas v. Evans*, 880 F.2d 1235, 1241-42 (11th Cir. 1989).The gist of a retaliation claim is that a prisoner is penalized for exercising such a right. *Id.* To establish a claim of retaliation, an inmate must demonstrate three elements: (1) that his speech was constitutionally protected; (2) that he suffered adverse action such that the allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) that there is a causal relationship between the retaliatory action and the protected speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005); *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). With respect to the causal element, the inmate must demonstrate that the correctional officials intended to retaliate against him because of his exercise of his First Amendment rights, and that but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied, sub nom. Palermo v. Woods*, 516 U.S. 1084 (1996); *see also Smith v. Mosley*, 532 F.3d at 1278.

Bruce asserts, in conclusory allegations, that Defendants placed him in Administrative Detention in retaliation for his filing an administrative remedy request, and again for filing this civil action. (Doc. 47 at 19, 29-32). However, the facts alleged, even if proven true, do not establish the necessary elements of a retaliation claim.

The filing of an administrative remedy request, or the filing of a lawsuit, is

18

protected speech under the First Amendment.  Bruce has properly met his burden of establishing the first element of a retaliation claim. However, Bruce has not demonstrated that placement in Administrative Detention would likely deter a similarly-situated person (*i.e.*, prisoner) of ordinary firmness from engaging in such speech. Administrative Detention is a non-punitive status, in which inmates are separated from the general inmate population but receive, to the extent possible, given available resources and security needs, the same general privileges provided to inmates in general population. *See former* 28 C.F.R. § 541.22(d) (2008) (in effect at the times relevant to this complaint); *see also* 28 C.F.R. § 541.31(n) (2012).

Bruce frequently refers to the numerous administrative remedy requests he filed throughout the relevant time periods, including explicitly stating that he continued to file requests following his placement in Administrative Detention, stating that certain of those remedy requests dealt specifically with the alleged retaliation he had suffered, and  providing copies of remedy requests he allegedly filed following the placement in Administrative Detention. (*See* Doc. 47 at 17 ("upon his release from the Special Housing Unit in January 2009, Bruce pursued administrative remedies regarding the second detention"); *see generally* Doc. 15 at 24-75 (referencing numerous remedy requests filed after his allegedly retaliatory placement in administrative detention). Given the statements by Bruce regarding his own experiences in the exact circumstance about which he complains, it simply cannot be said that an inmate of ordinary firmness would be chilled from filing

19

administrative remedy requests due to his placement in administrative detention, and Bruce clearly was not "chilled."

Further, Bruce does not demonstrate that but for the alleged retaliatory conduct, he would not have been placed in Administrative Detention. BOP regulations in force at the time specifically provided for placement of an inmate in Administrative Detention for a variety of reasons, including when necessary for the inmate's own protection. *See former* 28 C.F.R. §§ 541.22(a), 541.23 (2008).

Bruce notes, in his complaint, his belief that he needed protection from the alleged conduct of Defendant Gregory, and that he made this belief known to multiple BOP staff members. Bruce notes that he filed administrative remedy requests and, eventually, a civil action regarding the alleged conduct. (*See* Doc. 47 at 14-19). Further, Bruce himself concedes that "placing an inmate in the Special Housing Unit may be a reasonable response to an inmate complaint of staff misconduct[.]" (Doc. 47 at 29).

This is the situation demonstrated by the facts alleged in his third amended complaint: Bruce asserts that he complained to various staff regarding an alleged assault upon him from a staff member; that he filed an administrative remedy request regarding that assault (and, eventually, a lawsuit regarding it); and that at various times following the filing of those remedy requests and his lawsuit he was placed in Administrative Detention for what staff characterized to him as his own protection and the investigation of his allegations. Given the nature of the allegations

20

Bruce raises in his administrative remedy request and in the instant action, it is evident that, pursuant to both agency regulations and

common-sense, placement in Administrative Detention for his safety while the agency could investigate his claims is an appropriate response. It cannot be said that, but for the allegedly retaliatory motivation of BOP staff, he would not have been placed in administrative detention while investigations were pursued into his claim of staff misconduct.

As Bruce does not provide an appropriate basis upon which he can establish the requisite chilling effect of his placement in Administrative Detention, or the but-for causal relationship between such placement and his protected speech, he does not state a retaliation claim upon which relief can be granted.

## V.

**Defendants are entitled to qualified immunity.** "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (quoting *Hope v. Pelzer*, 536 U.S. at 739 and *Harlow v. Fitzgerald*, 457 U.S. 800,818 (1982)); *see also Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (ruling that "qualified immunity protect[s] from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)).

To receive qualified immunity, the government official must first establish that he was acting within his discretionary authority.  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 1982).  Clearly, the Defendants' actions in this case fell within the scope of their discretionary authority.

Once this threshold is met, it becomes the plaintiff's burden to overcome qualified immunity.  *Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).  This involves a two-part inquiry:  (1) "whether the facts alleged, taken in the light most favorable to the plaintiff[], show that the government official's conduct violated a constitutional right," and (2) "whether that right was clearly established at the time of the violation."  *Dalrumple v. Reno,* 334 F.3d 991, 995 (11th Cir. 2003).  Although deciding these issues in this sequence may be appropriate, it is no longer mandatory.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As shown above, the facts in this case, taken in the light most favorable to Bruce, show that Defendants' conduct did not violate Bruce's constitutional rights.  Defendants Jarvis, Mitchell, Mansukhani, Lawrence, Pari, Smith, Burley, Fluegel, Williams, Watts, or Rita did not affirmatively engage in any of the conduct underlying Bruce's allegations of sexual battery or placement in the Special Housing Unit, and Bruce neither asserts nor demonstrates a causal connection between their alleged failure to investigate or report misconduct and any alleged constitutional violation.

Bruce's allegations related to Defendant Gregory's conduct fall short of the severe or repetitive sexual misconduct required to state a claim for a constitutional

22

violation. Bruce's assertions against Defendants Bess and Skinner regarding his placement in the Special Housing Unit under disciplinary segregation or administrative detention do not state a constitutional claim because Bruce has no liberty interest in avoiding such placements under the conditions asserted in the instant case, and because Bruce's allegations do not demonstrate the necessary elements to state a First Amendment retaliation claim.

Because Bruce fails to make out a constitutional violation against any of the Defendants, each defendant is entitled to qualified immunity.

## VI.

**Plaintiff is not entitled to injunctive relief.** In addition to his claim for damages, Bruce requests that the Court issue preliminary and permanent injunctions against Defendants to avoid future violations of his rights. (Doc. 47 at 35). However, as Bruce cannot demonstrate an entitlement to such an injunction, his prayer for injunctive relief will be denied.

Under the PLRA, "a court 'shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of a Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.'" *Miller v. French*, 530 U.S. 327, 333 (2000) (quoting 18 U.S.C. § 3626(a)(1)(A)).

In the first instance, Bruce has not shown the violation of a federal right in any event; as such, an injunction is unnecessary to "correct" that right. Further,

prospective relief is unnecessary where Bruce alleges two instances of being placed in administrative detention over two years ago, and does not allege a reasonable basis to expect either that he will again be placed in administrative detention or that defendants are likely to violate any federal rights that might speculatively exist in the future. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (a plaintiff seeking injunctive relief must show a sufficient likelihood of future harm). Bruce's request for injunctive relief is without merit.

Accordingly, upon due consideration, it is hereby ORDERED that the Defendants' motion to dismiss Bruce's complaint (Doc. 59) is GRANTED. The Clerk is directed to enter judgment accordingly, terminate all other pending motions, and close this case.

DONE AND ORDERED at Ocala, Florida, on November 26, 2012.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Forrest Bruce